# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 9390 | **DATE** | 6/4/2004 |
| **CASE TITLE** | THE JOLLY GROUP, LTD. vs. MEDLINE INDUSTRIES, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion to reconsider dismissal [21-1] and for leave to file second amended complaint [21-2] is denied. Defendant's Rule 11 motion for sanctions [20-1] is denied. Defendant's motion for sanctions pursuant to 28 U.S.C. § 1927 [19-1] is granted. Determination of reasonable costs, expenses, and attorneys' fees due to the conduct of Jolly's counsel is referred to the assigned magistrate judge for a report and recommendation. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUN 0 8 2004 | 23 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | JXM | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | 6/4/2004 | |
| | | 2004 JUN -7 PM 12:44 | date mailed notice | |
| CB | courtroom deputy's initials | | PW | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


DOCKETED
JUN 08 2004

| | |
|---|---|
| THE JOLLY GROUP, LTD., | ) |
| | ) |
| Plaintiff, | ) No. 03 C 9390 |
| | ) |
| v. | ) Suzanne B. Conlon, Judge |
| | ) |
| MEDLINE INDUSTRIES, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

In this diversity action, Jolly Group, Ltd. ("Jolly") sued Medline Industries, Inc. ("Medline") for breach of contract. Jolly moves for reconsideration of the court's order dismissing its amended complaint with prejudice and for leave to file a second amended complaint. In separate motions, Medline moves for sanctions pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.

## BACKGROUND

In February 2003, Jolly and Medline representatives met to discuss Medline's possible licensing and marketing of Jolly's patented bandages. Compl. at ¶ 6; Am. Compl. at ¶ 6; 2nd Am. Compl. at ¶ 6. On March 4, Medline proposed that it market and manufacture the bandages in exchange for a royalty of $.20 per box sold. *Id.* at ¶ 6-7. Medline's proposal stated it had "no legal bearing until we draw up a contract." *Id.* During the next three months, the parties discussed contractual terms. *Id.* at ¶ 8. Medline maintains the parties' negotiations ultimately failed and no contract resulted. *See, e.g.*, Def. Mot. Dismiss Compl. at 1. Conversely, Jolly contends the parties entered into a valid, binding and enforceable contract subsequently repudiated by Medline. *See, e.g.*,



Compl. at ¶¶ 13, 17. Over the course of these proceedings, Jolly has proffered no less than four different versions of the so-called final contract to which the parties allegedly agreed.

I.      **Original Complaint**

In the original complaint, Jolly alleged Medline forwarded a contract on May 7 (hereinafter, "May 7th contract") that "reflected the essential terms of the parties' agreement," but that a revised contract followed the next day (hereinafter, "May 8th contract"). Compl. at ¶¶ 9-10. The May 7th and May 8th contracts substantially differed in numerous respects. *Compare* Compl. Ex. B *with* Ex. C. In response, Medline purportedly sent Jolly a red-lined version of the May 8th contract (hereinafter, "July red-lined contract"); the parties orally agreed on the terms. *Id.* at ¶¶ 12-13. Jolly then re-typed the July red-lined contract and sent the final contract (hereinafter, "final contract") to Medline for signature. *Id.* at ¶ 13. Among other things, the final contract differs from the July red-lined contract insofar as it required Medline to pay an annual minimum royalty payment of $250,000 and to purchase $5 million in products liability insurance. *Id.* Ex. E. Jolly did not allege that Medline signed either the July red-lined contract or the final contract. *Id.*

Upon receipt of Jolly's complaint, Medline moved to dismiss. Medline argued Jolly's complaint failed to allege the existence of a valid contract and the statute of frauds barred enforcement of the purported oral contract. Jolly did not respond. Instead, Jolly filed the amended complaint.

II.     **Amended Complaint and Rule 11**

Jolly changed its tack in the amended complaint. Jolly again alleged that Medline sent it the May 7th contract "reflect[ing] the essential elements of the parties' oral agreement." Am. Compl. at 9. However, Jolly eliminated reference to the May 8th contract. *Compare* Compl. at ¶ 10 *with*

2

Am. Compl. at ¶¶ 9-10. Jolly simply alleged that Medline's vice president Don Malin signed the May 7th contract on May 18 (hereinafter, "May 18th signed contract"). Am. Compl. at ¶ 9. According to Jolly, the May 18th signed contract constituted a valid, binding and enforceable contract. *Id.* at ¶ 17. Jolly also proffered the July red-lined contract as a valid, binding, enforceable modified contract to which the parties' thereafter agreed. *Id.* at ¶¶ 12, 17. The amended complaint contained no reference to the final contract identified in Jolly's original complaint. *Id.* at 13. Instead, Jolly merely alleged that it requested, but Medline rejected, additional modifications to the July red-lined contract. *Id.* at ¶ 13.

Upon receipt of the amended complaint, Medline's counsel sent a letter to Jolly's counsel Michael J. Rovell ("Rovell") on March 25. Def. Rule 11 Mot. Ex. H. Medline's counsel pointed out factual inconsistencies between Jolly's original and amended complaints and warned that a Rule 11 motion would be served in the event Jolly did not withdraw the amended complaint within seven days. *Id.* Medline's counsel challenged the "sequence of events" laid out in the amended complaint, noting that Jolly sought "to enforce an entirely different contract than the 'final contract' attached to its original complaint." *Id.* Medline's counsel pointed out that the May 18th signed contract that Jolly relied on as a valid, binding and enforceable contract was actually signed on August 18th, obviously after the parties exchanged the July red-lined contract. *Id.* Additionally, Medline's counsel argued that Jolly's amended complaint was legally defective under Illinois' "mirror image rule" governing contract actions because Jolly repeatedly requested modifications to the proposed contracts, including the May 7th and the July red-lined contracts. *Id.*

On March 26, Medline filed a motion to dismiss. While this court considered the motion, Medline served a Rule 11 Motion on Jolly on April 15. Two weeks later, the court dismissed the

3

amended complaint with prejudice. Minute Order, 4/30/04, Docket No. 17-1. In so doing, the court found the amended complaint legally defective because it alleged the existence of an unfulfilled condition precedent to the formation of a binding contract, *i.e.*, the parties' failure to draw up a complete contract. *Id.* The court further determined that the writings on which Jolly relied for purposes of satisfying the statute of frauds insufficiently evidenced the existence of a contract or its terms. *Id.* ("Indeed, the writings reveal an obvious disagreement about the contract's essential terms and conditions"). Medline filed its Rule 11 motion with the court on May 13, 2004, after dismissal of the amended complaint.

### III. Second Amended Complaint and Motion for Sanctions

The day after Medline filed its Rule 11 motion, Jolly sought leave to file a second amended complaint. Jolly now seeks to change course yet again. Not surprisingly, Jolly no longer alleges that the May 18th signed contract constitutes a valid, binding and enforceable contract between the parties. Instead, Jolly alleges that the May 7th contract constitutes a valid, binding and enforceable contract between the parties. 2nd Am. Compl. at ¶ 17. In addition, Jolly submits an entirely new contract dated August 25 as the parties' valid, binding and enforceable modified contract (hereinafter, "August 25th contract"). Jolly does not entirely abandon the July red-lined contract. Instead, Jolly alternatively alleges that the July red-lined contract constitutes the valid, binding and enforceable modified contract between the parties. *Id.* In response, Medline moves for sanctions pursuant to 28 U.S.C. § 1927.

### IV. Pre-litigation Correspondence

In connection with its separate motions for sanctions, Medline submits two demand letters it received from Jolly prior to the initiation of litigation. These demand letters recount a markedly

4

different version of the parties' dealings than Jolly represented to the court. In one letter, Jolly contended that

> In May 2003, Medline made a formal license offer in the form of a signed contract dated May 6, 2003. Jolly made a counterproposal in the form of its signed contract dated June 24. Medline countered with a marked contract redraft dated July __. Jolly accepted this offer by retyping the July __ draft, dating it August 28, 2003, signing it and returning it to Medline.

Def. Rule 11 Mot. Ex. E. Incredibly, Jolly neglected to mention, let alone attach, the contract it signed and dated August 28 (hereinafter, "August 28th signed contract") in its original, amended, or second amended complaint. *Id.* Ex. F. Not only is this the sixth contract Jolly has at some point claimed to be legally enforceable, the August 28th signed contract differs in substantial respects from the various contracts Jolly has advanced during proceedings before the court.

## DISCUSSION

### I. Motion for Reconsideration

Motions for reconsideration serve the limited function of either correcting manifest errors of law or presenting newly-discovered evidence. *Calumet Lumber, Inc. v. Mid-America Industrial, Inc.*, No 95 C 4875, 1996 WL 308243 at *1 (N.D. Ill. 1996). Motions for reconsideration do not provide a vehicle for a party to introduce new evidence or legal theories that could have been presented earlier. *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996).

Jolly ignores the standard governing its motion for reconsideration of this court's order dismissing the amended complaint with prejudice. Jolly contends the court erred in determining that the parties' purported oral agreement was not binding as a matter of law because Medline's March 4 proposal was "not an impediment to the later formation of an oral contract on different terms."

Pl. Mot. Reconsider at 2. Jolly argues that it "never contended that the March 4 proposal was a contract [or] that a binding oral agreement had been reached by then with the terms reflected in that proposal[.]" *Id.* This argument is improper; it directly contradicts Jolly's response to the motion to dismiss. Pl. Opp. Mem. at 3 ("By March 4, the parties had agreed to a distribution agreement. . . . The parties intended, however, that this agreement was not to be binding until a contract was drawn"). Jolly may not avail itself of a new legal theory as a matter of convenience. *Caisse Nationale de Credit Agricole*, 90 F.3d at 1269.

Jolly's breach of contract claim cannot proceed because the March 4th proposal "was not to be binding until a contract was drawn." Am. Compl. ¶ 7. As Jolly admittedly rejected each contract proffered by Medline, no final contract was ever drawn. Am. Compl. ¶¶ 10, 13. Jolly's misguided argument that the May 7th contract constituted the drawn contract is untenable. The May 7th contract cannot constitute the drawn contract because Jolly requested it be modified. Am. Compl. ¶ 10. Nor does Jolly's disingenuous attempt to distinguish between essential and non-essential contract terms change this result. Pl. Mot. Reconsider at 3 ("the modifications that Jolly requested to the written agreements were not essential terms and the parties' failure to agree on those does not defeat the contract"). The price term – obviously essential to the parties' contract – changes between the May 7th contract and the July red-lined contract. *Compare* Am. Compl. Ex. B ("Medline shall pay Jolly . . . a royalty of $0.22 per box) *with* Am. Compl. Ex. D ("Medline shall pay Jolly . . . a royalty of $0.25 . . . per box).

Jolly's statute of frauds argument also lacks merit. Jolly's amended complaint failed to identify writings sufficiently evidencing "the existence of a contract and its terms and conditions." *Storm & Associates, Ltd. v. Cuculich*, 700 N.E.2d 202, 209 (1st Dist. 1998). Contrary to Jolly's

6

position, the amended complaint and exhibits did not merely reveal disagreement about non-essential contractual terms. Instead, Jolly pointed to three substantially different draft contracts. None of these drafts illuminated any final agreement regarding essential contractual terms. If anything, these drafts pinpointed continued disputes between Jolly and Medline during negotiations. Medline, for example, did not include the minimum royalty payment of $250,000 in the August 25th contract, despite purportedly agreeing to the payment in the July red-lined contract. *Compare* Am. Compl. Ex. F (no minimum royalty payment) *with* Ex. D ($250,000 minimum royalty payment); Am. Compl. ¶ 12 ("Medline sent Jolly by e-mail a redlined version of a Jolly draft, incorporating the modifications that had been agreed to by both of the parties"). Absent a writing showing the existence of a contract, any purported oral agreement must fail as unenforceable under the statute of frauds. Jolly's proposed second amended complaint cures neither of these defects. *See*, 2nd Am. Compl. ¶ 7 ("The [March 4th] proposal was to have 'no legal bearing until we draw up a contract'"); ¶ 10 ("Jolly requested some modifications"); ¶ 13 ("Although Jolly requested that the contract be modified by the addition of certain other clarifying terms . . . those proposed modifications were not accepted by Medline"); 2nd Am. Compl. Ex. B-1 ("Please take a look at this contract and give me your thoughts"); Ex. F ("Attached is the contract that we agreed upon, correct? . . . Richard called me and stated that it wasn't"). Accordingly, the court denies Jolly's motion for leave to file the second amended complaint as futile. *Indiana Funeral Directors Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 654 (7th Cir. 2003) (leave to amend may be denied due to futility of amendment).

## II. Rule 11 Sanctions

Under Rule 11, a motion for sanctions "shall not be filed with or presented to the court unless, within twenty-one days after the service of the motion (or such period as the court may

7

prescribe), the challenged paper, claim, defense, contention, allegation or denial is not withdrawn or appropriately corrected." Fed. R. Civ. P. 11(c)(1)(A). This twenty-one day safe harbor period allows a party to avoid the imposition of sanctions simply by withdrawing the offending submission. *Harding Univ. v. Consulting Services Group, L.P.*, 48 F.Supp.2d 765, 770 (N.D. Ill.1999). It is an abuse of discretion for the court to impose sanctions pursuant to a Rule 11 motion without ensuring compliance with the twenty-one day safe harbor period. *Divane, Jr., et al. v. Krull Electric Co., Inc.*, 200 F.3d 1020, 1025 (7th Cir. 1999).

Medline first informed Jolly of its intent to seek Rule 11 sanctions by letter on March 25, 2004. Medline's letter expressly warned Jolly that it would serve a Rule 11 motion if Jolly failed to withdraw the amended complaint within seven days. The next day Medline filed a motion to dismiss the amended complaint. Faced with Medline's warning letter and motion to dismiss, Jolly did not withdraw. Instead, Medline served its Rule 11 motion on Jolly on April 15, and Jolly filed its response to Medline's motion to dismiss on April 19. This court dismissed Jolly's amended complaint with prejudice on April 30, six days before the expiration of the twenty-one day safe harbor period. Therefore, Jolly did not receive the benefit of the full safe harbor period. Accordingly, Rule 11 sanctions cannot be imposed in this instance. *Divane, Jr., et al.*, 200 F.3d at 1025 (failure to adhere to twenty-one day safe harbor period constitutes abuse of discretion).

### III. Section 1927 Sanctions

Medline also moves for sanctions pursuant to 28 U.S.C. § 1927. Section 1927 provides that "any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." A court has discretion to impose § 1927 sanctions

8

when an attorney has acted in an "objectively unreasonable manner" by engaging in a "serious and studied disregard for the orderly process of justice," or where a "claim [is] without a plausible legal or factual basis and lacking in justification." *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994) (citation omitted). An attorney's objectively unreasonable intent may be inferred from a total lack of factual or legal basis for the suit. *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789, 795 (7th Cir. 1983). Finally, § 1927 is interpreted by the Seventh Circuit "to impose a continuing duty upon attorneys to dismiss claims that are no longer viable." *Dahnke v. Teamsters Local 695*, 906 F.2d 1192, n.6 (7th Cir. 1990).

As summarized, this court thoroughly reviewed the pleadings and correspondence relevant to these proceedings. The record shows no plausible factual basis for Jolly's breach of contract suit against Medline. Instead, the record reveals Jolly has asserted multiple, contradictory versions of events regarding the parties' negotiations and at least four different contracts for the purpose of bringing a baseless breach of contract claim. Nor can Rovell plausibly claim ignorance. The record firmly establishes that Rovell continued to press this litigation, despite repeated warnings by Medline's counsel. Confronted with Medline's original motion to dismiss, Rovell filed an amended complaint that not only flatly contradicted the original complaint, but in bad faith sought relief on the basis of the May 18th contract.[1] Def. Rule 11 Mot. Ex. F. Medline's subsequent Rule 11 warning letter and motion had no effect. Instead, Rovell filed a response brief, arguing that the amended complaint should not be dismissed. Even after this court dismissed the amended complaint with

---

[1] Rovell's claim that the discrepancy is a mere issue of disputed fact between the parties is belied by the pre-litigation demand letter Jolly's former counsel sent to Medline on October 16, 2003, describing the May 18th contract as erroneously signed by Malin in August 2003. Def. Rule 11 Mot. Ex. F.

9

prejudice, Rovell continued to litigate, filing the motion for reconsideration and leave to file the second amended complaint currently before the court. Rovell has wasted both the parties' and this court's resources. Viewed in light of the parties' pre-litigation correspondence, Rovell's conduct is egregious. Def. Rule 11 Mot. Ex. E ("Jolly accepted this offer by retyping the July __ draft, dating it *August 28, 2003*, signing it and returning it to Medline") (emphasis added). *Overnite Transportation Co.*, 697 F.2d at 795 (objectively unreasonable intent may be inferred from lack of factual basis). Medline is entitled to an award of excess costs, expenses, and attorneys' fees it reasonably incurred due to Rovell's multiplication of these proceedings.

## CONCLUSION

Jolly's pursuit of this litigation is at an end. Although Rule 11 sanctions are inappropriate due to the unexhausted twenty-one day safe harbor period, the egregiousness of Rovell's conduct in manipulating the facts and asserting contradictory positions to enable continuation of this frivolous lawsuit warrants sanctions under 28 U.S.C. § 1927. Determination of reasonable costs, expenses, and attorneys' fees due to Rovell's conduct is referred to the assigned magistrate judge for a report and recommendation.

June 4, 2004

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge