# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **THE JOLLY GROUP, LTD.,** | ) | |
| **Plaintiff,** | ) | **Cause No. 03 C 9390** |
| | ) | |
| **v.** | ) | **Judge Suzanne B. Conlon** |
| | ) | **Magistrate Judge Geraldine Soat Brown** |
| **MEDLINE INDUSTRIES, INC.,** | ) | |
| **Defendant.** | ) | |

To: Honorable Suzanne B. Conlon,
United States District Judge

## REPORT AND RECOMMENDATION

Geraldine Soat Brown, United States Magistrate Judge

This case comes to be heard on a Motion for Rule 11 Sanctions [dkt 20], a Motion for Sanctions Pursuant to 28 U.S.C. § 1927 [dkt 19], and a supplemental request for sanctions pursuant to 28 U.S.C. § 1927 [dkt 31] filed by defendant Medline Industries, Inc. The District Judge referred the motions to this court for a report and recommendation. [Dkt 38.] For the following reasons, this court respectfully recommends that Medline's Motion for Rule 11 Sanctions be DENIED, Medline's Motion for Sanctions Pursuant to 28 U.S.C. § 1927 be GRANTED as discussed herein, and Medline's supplemental request for sanctions pursuant to 28 U.S.C. § 1927 be DENIED.

## Factual Background

### I.    Proceedings before the District Judge

The District Judge dismissed the underlying lawsuit because the plaintiff Jolly Group, Inc. ("Jolly") had failed, after numerous attempts, to state a claim against defendant Medline Industries, Inc. ("Medline"). (April 30, 2004 Order [dkt 17]; June 4, 2004 Memorandum Opinion and Order at 7, 9-10 [dkt 23]). The various pleadings are relevant to the present motions because the shifting positions taken by Jolly are the basis for Medline's request for sanctions. The following summary is taken from the findings set forth in the *Background* and *Discussion - Motion for Reconsideration* sections of the District Judge's June 4, 2004 Memorandum Opinion and Order (pages 1-7).[1]  In summary, Jolly contended that the parties entered into a valid, binding and enforceable contract that was subsequently repudiated by Medline, while Medline maintained that the parties' negotiations ultimately failed and no contract resulted. (June 4, 2004 Op. & Order at 1-2.)

#### A.    Jolly's Original Complaint

Jolly filed its original complaint on December 29, 2003. [Dkt 1.] In the original complaint, Jolly alleged that in February 2003, Jolly and Medline representatives met to discuss Medline's possible licensing and marketing of Jolly's patented bandages. On March 4, 2003 Medline proposed that it market and manufacture the bandages in exchange for a royalty of $.20 per box sold. Medline's proposal stated that it had "no legal bearing until we draw up a contract." During the next three months, the parties discussed contractual terms. Jolly alleged that Medline forwarded a

---

[1] The District Judge specifically did not vacate those findings, although other parts of that Opinion and Order were vacated. *See* August 9, 2004 Order. [Dkt 38.]

contract on May 7th (the "May 7th contract") that "reflected the essential terms of the parties' agreement," but that a revised contract followed the next day (the "May 8th contract"). The May 7th and May 8th contracts differed in numerous respects. In response, Medline purportedly sent Jolly a redlined version of the May 8th contract (the "July redlined contract"); the parties orally agreed on the terms. Jolly then re-typed the July redlined contract and sent the final contract ("final contract") to Medline for signature. Among other things, the final contract differed from the July redlined contract insofar as it required Medline to pay an annual minimum royalty payment of $250,000 and to purchase $5 million in products liability insurance. Jolly did not allege that Medline signed either the July redlined contract or the final contract. (June 4, 2004 Op. & Order at 1-2.)

Upon receipt of Jolly's complaint, Medline moved to dismiss. [Dkt 4.] Medline argued that Jolly's complaint failed to allege the existence of a valid contract and that the statute of frauds barred enforcement of the purported oral contract. Jolly did not respond. Instead, Jolly filed an amended complaint. [Dkt 10.] (June 4, 2004 Op. & Order at 2.)

## B. Jolly's Amended Complaint and Medline's Motions for Sanctions

In its amended complaint, Jolly alleged that Medline sent it the May 7th contract "reflect[ing] the essential elements of the parties' oral agreement." (Am. Compl. ¶ 9.) However, Jolly eliminated reference to the May 8th contract. Jolly simply alleged that Medline's vice president, Don Malin, signed the May 7th contract on May 18, 2003 (the "May 18th signed contract"). According to Jolly, the May 18th signed contract constituted a valid, binding and enforceable contract. Jolly also alleged that thereafter Medline sent "a redlined version of a Jolly draft" (presumably the July redlined contract), which Jolly alleges was "a modified agreement accepted by the parties." (Am. Compl. ¶

12.) The amended complaint contained no reference to the so-called "final contract" identified in Jolly's original complaint. Instead, Jolly alleged that it requested, but Medline rejected, additional modifications to the July redlined contract. (Am. Compl. ¶ 13; June 4, 2004 Op. & Order at 2-3.)

Upon receipt of the amended complaint, Medline's counsel sent a letter to Jolly's counsel, Michael J. Rovell ("Rovell"), on March 25, 2004. (Def.'s Rule 11 Mot., Ex. H.) Medline's counsel pointed out factual inconsistencies between Jolly's original and amended complaints and warned that a Rule 11 motion would be served in the event Jolly did not withdraw the amended complaint within seven days. (*Id.*) Medline's counsel challenged the "sequence of events" laid out in the amended complaint, noting that Jolly sought "to enforce an entirely different contract than the 'final contract' attached to its original complaint." Medline's counsel also pointed out that the May 18th signed contract that Jolly relied on as a valid, binding and enforceable contract was actually signed on August 18th, after the parties had exchanged the July redlined contract. Additionally, Medline's counsel argued that Jolly's amended complaint was legally defective under Illinois' "mirror image rule" governing contract actions because Jolly repeatedly requested modifications to the proposed contracts, including the May 7th and the July redlined contracts. (June 4, 2004 Op. & Order at 3.)

The following day, March 26, 2004, Medline filed a motion to dismiss Jolly's amended complaint. [Dkt 12.] While the district court was considering the motion, Medline served (but did not file) its Rule 11 Motion on Jolly on April 15. (June 4, 2004 Op. & Order at 3.) Jolly did not withdraw its amended complaint, but instead filed an opposition to Medline's motion to dismiss. [Dkt 16.] In its opposition, Jolly asserted, among other things, that it would seek leave to amend its complaint again to include certain exhibits if the court believed such exhibits were necessary to satisfy the statute of frauds. (Pl.'s Opp'n at 8.) At the conclusion of its opposition brief, Jolly

-4-

requested that the court "deny defendant's motion to dismiss or, in the alternative, permit plaintiff leave to replead to add allegations concerning the additional writings identified here." (*Id.*)

The District Judge granted Medline's motion and dismissed the amended complaint *with prejudice*, entering judgment against Jolly on April 30, 2004 (which was 15 days after Medline served its Rule 11 motion). *See* April 30, 2004 Order. [Dkt 17, 18.] In doing so, the court found the amended complaint legally defective because it alleged the existence of an unfulfilled condition precedent to the formation of a binding contract, *i.e.*, the parties' failure to draw up a complete contract. The court further determined that the writings on which Jolly relied for purposes of satisfying the statute of frauds insufficiently evidenced the existence of a contract or its terms. (June 4, 2004 Op. & Order at 3-4.)

On May 13, 2004, Medline filed its motion for Rule 11 sanctions. [Dkt 20.] That same day, it also filed a motion for sanctions pursuant to 28 U.S.C. § 1927. [Dkt 19.] In its § 1927 motion, Medline requested attorneys' fees and costs "in excess of $30,000." (Pl.'s § 1927 Mot. at 6.)

## C.    Motion to Reconsider Dismissal and Proposed Second Amended Complaint

On May 14, 2004, the day after Medline filed its motions for sanctions pursuant to Rule 11 and § 1927, Jolly filed a motion to reconsider the court's order dismissing the case, and sought leave to file a second amended complaint. [Dkt 21.] That motion was signed by Jolly's counsel, Rovell. (*Id.* at 5.) In the proposed second amended complaint, Jolly no longer alleged that the May 18th contract constituted a valid, binding and enforceable contract. Instead, Jolly alleged that the May 7th contract constituted a valid, binding, and enforceable contract between the parties. In addition, Jolly submitted an entirely new contract, dated August 25, as the parties' valid, binding and

enforceable modified contract (the "August 25th contract"). The proposed second amended complaint alternatively alleged that the July redlined contract constituted the valid, binding and enforceable modified contract between the parties. (June 4, 2004 Op. & Order at 4.)

### D. The Orders Regarding Sanctions

The District Judge issued an order on May 25, 2004, taking all of the motions under advisement. (May 25, 2004 Order.) [Dkt 22.] Medline did not file a response to Jolly's motion to reconsider. Jolly did not file a response to Medline's motions for sanctions, nor request an extension of time in which to do so. (August 9, 2004 Order.) On June 4, 2004, the District Judge denied Jolly's motion to reconsider and for leave to file a second amended complaint, denied Medline's Rule 11 motion for sanctions, and granted Medline's motion for sanctions pursuant to 28 U.S.C. § 1927 against Rovell personally. (June 4, 2004 Op. & Order at 10.) The court held that Medline was entitled to an award of "excess costs, expenses, and attorneys' fees it reasonably incurred due to Rovell's multiplication of these proceedings." (*Id.*)

On June 18, 2004, Rovell filed a motion to vacate the sanctions order, claiming that he was denied due process because he had not been given an opportunity to respond before the order was entered. (Pl.'s Counsel's Mot. Vacate Sanctions Order at 7-9.) [Dkt 26.] Medline filed a response to Rovell's motion in which it argued, among other things, that the court should "expand its order further" and "grant additional sanctions under Section 1927 as Rovell continues to perpetuate this frivolous action." (Def.'s Resp. Pl.'s Counsel's Mot. Vacate Sanctions Order at 12, 13.) [Dkt 31.] While Rovell's motion to vacate the sanctions order was pending, Jolly filed an appeal to the Seventh Circuit from the dismissal of its suit. [Dkt 29, 30.]

On August 9, 2004, after a hearing was held on Rovell's motion to vacate the court's sanctions order, the District Judge entered an order vacating certain portions of her June 4, 2004 Memorandum Opinion and Order, specifically, the Rule 11 Sanctions portion, the § 1927 Sanctions portion, and the Conclusion portion (pages 7-10). (August 9, 2004 Order.) The District Judge explained that although Rovell had received adequate notice that Medline would seek sanctions and the factual basis for its sanctions motions, a briefing schedule should have been set to allow Rovell the opportunity to respond to the motions for sanctions. (August 9, 2004 Order.) The District Judge then referred Medline's motion for Rule 11 sanctions, motion for sanctions pursuant to 28 U.S.C. § 1927, and supplemental request for sanctions pursuant to 28 U.S.C. § 1927 to this court for a report and recommendation. (August 9, 2004 Order.)

## II.    Proceedings before this Court

At a hearing before this court on August 25, 2004, Rovell stated that Jolly would dismiss its appeal to the Seventh Circuit if Medline would withdraw its current motions for sanctions. (August 25, 2004 Order.) [Dkt 42.] This court gave Medline one week to consider Jolly's proposal, and set a briefing schedule on the motions in the event Medline would not agree. (*Id.*) Medline ultimately did not agree; thus, on September 22, 2004, Rovell submitted a response to Medline's motions for sanctions, and, on October 12, 2004, Medline filed its reply to Rovell's response. [Dkt 46, 47.] In its reply, Medline stated that it is "entitled to an award of sanctions under Section 1927 for all of the costs and expenses it incurred in this case from the outset." (Def.'s Reply at 19.) On October 25, 2004, Rovell filed a motion for oral argument or, in the alternative, for leave to file a sur-reply. [Dkt 48.] This court granted Rovell's motion insofar as it requested oral argument, and an oral argument

was held on this matter on November 23, 2004. [Dkt 49, 50.]

## Discussion

### I.    Medline's Motion For Rule 11 Sanctions

Medline's motion for Rule 11 sanctions is based on two grounds: (1) that Jolly violated Rule 11(b)(3) because there was no foundation for the factual allegations in the amended complaint; and (2) that Jolly violated Rule 11(b)(2) because the legal theory for breach of contract in the amended complaint was untenable. (Def.'s Rule 11 Mot. at 8-14.) Medline seeks sanctions against both Jolly and its attorneys. (*Id.* at 15.)

In response, Jolly and Rovell argue that Medline's motion should be denied because: (1) Medline's Rule 11 motion was denied on June 4, 2004 and the district court had no jurisdiction to vacate or reconsider the denial because Medline did not move the court to reconsider or appeal that order; (2) Medline's Rule 11 motion violated the twenty-one day safe harbor provision of Rule 11; (3) Medline's claim that Jolly violated Rule 11(b)(3) is unfounded as it is based on an inadvertent attachment of a June agreement and a misreading of the handwritten date "8-18," both of which were allegedly corrected; and (4) Medline's claim that Jolly violated Rule 11(b)(2) is incorrect as Jolly's claim was supported by existing law. (Pl.'s Resp. at 2-15.)[2]

---

[2] Jolly also argues that its "response is limited to those matters raised in the motion and no conduct other than that set forth in the motions should be considered as a basis for awarding sanctions." (Pl.'s Resp. at 1.) By this statement, Jolly is presumably referring to Medline's current discussion of Jolly's motion to reconsider and proposed second amended complaint, which were filed the day after Medline filed its motions for sanctions. However, the proposed second amended complaint was addressed by Medline in its motion for sanctions. Jolly's opposition to Medline's motion to dismiss alternatively requested that the court "permit plaintiff leave to replead to add allegations concerning the additional writings identified here." (Pl.'s Opp'n at 8.) Medline cited the fact that "Jolly also sought leave to file a Second Amended

Jolly argues that Medline's Rule 11 motion should be denied because that motion violated the 21-day "safe harbor" provision set forth in Rule 11(c)(1)(A). (Pl.'s Resp. at 3.) Fed. R. Civ. P. 11(c)(1)(A) provides that a motion for sanctions "shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . , the challenged paper . . . is not withdrawn or appropriately corrected." Jolly observes that Medline's Rule 11 motion was dated April 13, 2004 (and served on April 15, 2004), and the District Judge dismissed the amended complaint on April 30, 2004. (Pl.'s Resp. at 3; June 4, 2004 Op. & Order at 3, 8.) Although Medline filed its Rule 11 motion for sanctions on May 13, 2004, more than twenty-one days after serving the motion, by that date the case had been dismissed with prejudice. *See* Def.'s Rule 11 Mot.; April 30, 2004 Order. Jolly argues that the District Judge recognized that fact when, in her June 4, 2004 Opinion, she stated that Jolly "did not receive the benefit of the full safe harbor period." (Pl.'s Resp. at 3) (citing June 4, 2004 Op. & Order at 7-8.)

In support of its Rule 11 motion, Medline points to *Methode Elec., Inc. v. Adam Tech., Inc.*, 371 F.3d 923 (7th Cir. 2004), a case decided by the Seventh Circuit after the District Judge's order denying Medline's motion for Rule 11 sanctions. (Def.'s Reply at 3-5.) In *Methode*, the district court entered substantial sanctions, including attorneys' fees, against a plaintiff. 371 F.3d at 925. The defendant had made an oral motion for Rule 11 sanctions, but two days later the plaintiff voluntarily dismissed the case. *Id.* at 925. However, by then the district court had issued a rule to show cause why the plaintiff should not be sanctioned. *Id.* Subsequently, the district court entered sanctions. *Id.* at 924-25. On appeal, the Seventh Circuit affirmed the imposition of sanctions, but not on the basis of Rule 11. *Id.* at 927-28. Instead, the court found that "this was a proper case for

---

Complaint" in support of its motion for § 1927 sanctions. (Def.'s § 1927 Mot. at 3.)

the exercise of the court's inherent power to control the proceedings before it." *Id.* at 927. Although the Seventh Circuit noted that there were a number of possible arguments why sanctions under Rule 11 might be justifiable, it did not decide on that basis. *Id.* Observing that "[e]vents often move too fast to allow strict compliance with [Rule 11]," the Seventh Circuit concluded that the court may rely on its inherent authority to impose sanctions for abuse of the judicial system. *Id.*

Medline suggests that the District Judge's decision to deny Rule 11 sanctions should be reconsidered because, like *Methode*, this is a case where "events simply moved too quickly to permit technical compliance with the safe harbor provision in Rule 11." (Def.'s Reply at 4-5.) However, the Seventh Circuit's opinion in *Methode* does not undermine the District Judge's decision to deny Rule 11 sanctions here because Jolly did not have the benefit of the full safe harbor period. On the contrary, the district court's decision is consistent with Seventh Circuit authority. *See, e.g., Divane, Jr., et al. v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025-26 (7th Cir. 1999) (stating that "[a] court that imposes sanctions by motion without adhering to this twenty-one day safe harbor has abused its discretion" and "the twenty-one day safe harbor is not merely an empty formality").[3]

The basis on which the Seventh Circuit affirmed the imposition of sanctions in *Methode*, the court's own "inherent power to control the proceedings before it," was available to the District Judge in this case. *See Methode*, 371 F.3d at 927 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991)). The District Judge chose not to exercise that inherent authority in this case, but rather to proceed under 28 U.S.C. § 1927. *See* June 4, 2004 Op. & Order at 8-10. This court sees no reason

---

[3] In *Divane*, the Seventh Circuit affirmed the imposition of Rule 11 sanctions although the motion for sanctions was filed after the judgment had been entered, because the motion had been served (although not filed) more than twenty-one days prior to the entry of judgment. 200 F.3d at 1026.

to change that result. Thus, this court respectfully recommends that Medline's motion for Rule 11 sanctions be denied.[4]

## II.     Medline's Motion for Sanctions Pursuant to 28 U.S.C. § 1927

### A.     Section 1927 Sanctions

In the section of the June 4, 2004 Opinion and Order that was subsequently vacated, the District Judge, finding that Jolly had asserted multiple, contradictory versions of events and at least four different contracts, entered sanctions against Rovell personally pursuant to 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Section 1927 is a punitive provision and therefore must be strictly construed. *Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir. 1984) Section 1927 sanctions should only be awarded when an attorney "unreasonably and vexatiously" multiplies the proceedings. *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 120 (7th Cir. 1994). Vexatious conduct involves either subjective or objective bad faith. *Pacific Dunlop Holdings*, 22 F.3d at 120. "[E]xtremely negligent conduct, like reckless and indifferent conduct" can demonstrate objective bad faith. *Id.* An attorney acts in an "objectively unreasonable manner" for purposes of § 1927 by engaging in a

---

[4] In light of this recommendation, Jolly's additional arguments why Medline's Rule 11 motion should be denied (*i.e.*, that the district court had no jurisdiction to vacate or reconsider the denial of Medline's Rule 11 motion, that Medline is not correct in claiming that Jolly violated Rule 11(b)(3), and that Jolly's claim was supported by existing law) need not be addressed.

"serious and studied disregard for the orderly process of justice," or by pursuing a claim that is "without a plausible legal or factual basis and lacking in justification." *Id.* at 119 (citation omitted). An attorney's objectively unreasonable intent may be inferred from a total lack of factual or legal basis for the suit. *Benet v. Schwartz*, No. 93 C 7295, 1995 WL 562087 at *3 (N.D. Ill. Sept. 21, 1995) (Conlon, J.) (citing *Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 795 (7th Cir. 1983)). *See also Dahnke v. Teamsters Local 695*, 906 F.2d 1192, 1201 n. 6 (7th Cir. 1990) (superseded on other grounds) (stating that § 1927 imposes "a continuing duty upon attorneys to dismiss claims that are no longer viable"). However, where the alleged misconduct is the filing and arguing of a claim, it is not sufficient that the claim be found meritless; the claim must be without plausible legal or factual basis and lacking in justification. *Knorr Brake*, 738 F.2d at 226-27. "In sum, an attorney's actions must generally be 'so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.'" *Fahey v. Creo Prods., Inc.*, No. 96 C 5709, 1998 WL 474114 at *4 (N.D. Ill. Aug. 4, 1998) (Castillo, J.) (citing *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)).

## B.  Discussion

Medline argues that sanctions pursuant to § 1927 should be imposed because "there was no plausible legal or factual basis for Jolly's breach of contract claim." (Def.'s § 1927 Mot. at 4.)[5] Medline argues that because, as the amended complaint admits, the parties agreed that their negotiations had "no legal bearing until we draw up a contract" and Jolly rejected each of the

---

[5] Medline also expressly incorporated its arguments made in its motion for Rule 11 sanctions, which are discussed herein. (Def.'s § 1927 Mot. at 2.)

proposed contracts drafted by Medline, "[a]ny reasonable attorney would have known . . . that Jolly's breach of contract claim against Medline was untenable." (Def.'s § 1927 Mot. at 5.) Medline further asserts that Jolly's amended complaint simply "changed, deleted and distorted troublesome facts and documents attached to its original Complaint." (Def.'s § 1927 Mot. at 5.) Medline points out that Jolly identified no less than three documents as the parties' "final contract." (Def.'s Rule 11 Mot. at 8-9.) Medline speculates that Jolly was in "hope of extracting a settlement from Medline." (Def.'s § 1927 Mot. at 5.) Medline concludes that Jolly's attorneys' "refusal to voluntarily dismiss their untenable breach of contract claim, their disregard of Medline's multiple warnings that Jolly's conduct was sanctionable, and their decision to oppose Medline's Motion to Dismiss the Amended Complaint warrant sanctions under Section 1927." (Def.'s § 1927 Mot. at 6.)

As to the legal positions he advanced, Rovell argues that Jolly's breach of contract claim did not change because Jolly's claim "always has been based on an oral contract," pointing to paragraph 9 of the original complaint, which was modified in the amended complaint to characterize the contract as oral, and to Jolly's opposition to Medline's motion to dismiss, which argued that "the oral agreement [] became enforceable by the writing submitted by Medline." (Pl.'s Resp. at 16) (citing Jolly Opp'n Mot. Dismiss at 1, 2, 4, 8.) Rovell asserts that he viewed Medline's statement that its March 4 proposal was to have "no legal bearing until we draw up a contract," as applying only to the March 4 proposal, and not to all subsequent writings. (Pl.'s Resp. at 14.) Rovell also offers an explanation as to how, in his view, there was an enforceable contract in this case and the lawsuit was therefore not intentionally baseless and frivolous. *See* Pl.'s Resp. at 13-14.

The purpose of the present report and recommendation is not to re-litigate issues previously determined by the District Judge, who squarely rejected Rovell's legal arguments that a contract had

-13-

been formed that satisfied the statute of frauds, both initially in the decision granting the motion to dismiss the amended complaint and again in the decision on the motion for reconsideration. The question here is whether sanctions pursuant to § 1927 should be imposed. For that purpose, the court considers Rovell's conduct in advancing legal arguments as divided into two time periods: Before and after the District Judge's decision to dismiss the amended complaint with prejudice. Until that decision, Rovell's theories, reflected in the first complaint and the amended complaint, had not been judicially rejected. "[T]he line between strong advocacy and vexatious conduct is not always bright." *R & B Group, Inc. v. BCI Burke Co., Inc.*, No. 96 C 2620, 1999 WL 754632 at *7 (N.D. Ill. Sept. 9, 1999) (Pallmeyer, J.) (quoting *Scenic View, Inc. v. Dubiel Prods., Inc.*, No. 98 C 6641, 1999 WL 261833 at *5 (N.D. Ill. Apr. 14, 1999)). In this court's view, sanctions under § 1927 should not be imposed on Rovell *solely* for advancing unsuccessful legal theories in the complaint and amended complaint.[6] (Rovell's conduct other than advancing a legal position is discussed below.)

On the other hand, Rovell's conduct after the district court's April 30, 2004 order rejecting those theories is a different matter. Rovell fails to explain how he could seriously have thought that his motion to reconsider would be successful or that Jolly would be granted leave to file a second amended complaint after the case had been dismissed with prejudice. Significantly, the district court's June 4, 2004 Opinion and Order specifically cited Rovell's filing of the motion to reconsider and for leave to file the second amended complaint as grounds for sanctions under § 1927. (June 4, 2004 Op. & Order at 10.) Rovell objected that he had not had an opportunity to be heard before sanctions were imposed on him for that conduct. (Pl.'s Counsel's Mot. Vacate Sanctions Order at

---

[6] Whether Jolly's amended complaint violated Rule 11 is now moot, since sanctions under that Rule are unavailable, as discussed above.

7.) However, given the opportunity to respond following the referral to this court, Rovell fails to address *in any way* the District Judge's criticism of the motion to reconsider and for leave to file the second amended complaint. *See* Pl.'s Resp. at 15-21.

Indeed, to the extent that Rovell discusses that motion, the discussion reveals that, in fact, he had no hope of succeeding on it, and was only trying to create a better record for purposes of appeal than the record he had put before the District Judge. *See* Pl.'s Resp. at 17: "On May 14, 2004, Jolly sought leave to amend the Amended Complaint to perfect its appellate record." That is not a proper purpose for a motion for reconsideration. As the District Judge stated, "Motions for reconsideration do not provide a vehicle for a party to introduce new evidence or legal theories that could have been presented earlier." (June 4, 2004 Op. & Order at 5) (citations omitted). Rovell's filing of the motion to reconsider and for leave to file a second amended complaint was clearly vexatious and unreasonable, needlessly prolonging the litigation.

Other conduct by Rovell evidences the "extremely negligent[,]. . . reckless and indifferent conduct" that demonstrates bad faith and justifies sanctions under § 1927. *See Pacific Dunlop Holdings*, 22 F.3d at 120. Rovell's deplorable sloppiness in assembling Jolly's pleadings, combined with his disingenuous explanations, make working through the claims and arguments a nightmare. For example, Rovell now admits that his office attached the wrong document (the "June document") as Exhibit E to the original complaint. (Pl.'s Resp. at 4.) That is not a minor error; in the original complaint, Exhibit E is called the "final contract." (Compl. ¶13.) Rovell asserts, in a declaration attached to his response, that his attachment of the undated June document as Exhibit E to the original complaint was simply a "collating mistake" caused by his poor eyesight (diabetic retinopathy), and that he had actually intended to attach the August 28 contract instead. (Pl.'s Resp.

-15-

at 5-6, 19; Ex. 2, Declaration of Michael J. Rovell ¶¶ 5-8, 11.)[7] However, nothing that straightforward was expressed to the District Judge at the time; Rovell made no effort to correct his mistake for the court or opposing counsel.

The June document then disappeared from the amended complaint, but no "August 28 contract" is alleged in the amended complaint. Instead, the amended complaint alleges that "[a] valid, binding and enforceable contract was entered into by the parties on or about May 18, 2003 (see Exhibit C), and a valid, binding and enforceable modified contract was thereafter entered (see Exhibit D)." (Am. Compl. ¶ 17.) Neither Exhibit C nor Exhibit D is the "August 28 contract."

Rovell now states that when he "realized that [Jolly's] claim pursuant to the August 28 expression of the oral agreement was not enforceable because of the statute of frauds, [he] dropped the claim." (Pl.'s Resp. at 18; *see also* Pl.'s Resp. at 7; Rovell Decl. ¶ 13.) However, Jolly's Opposition to Medline's motion to dismiss the amended complaint did not explain the mistake regarding the June document, nor did it state (as Rovell does now) that Jolly originally pleaded the purported "August 28" contract, but on reflection decided to drop it. On the contrary, Jolly's Opposition denied that Jolly *ever* claimed that the "August 28" contract was binding, stating, "As plaintiff is not relying and *never did rely on* that agreement, it was superfluous to the original complaint, similarly not needed for the Amended Complaint, and therefore was not attached to the Amended Complaint." (Pl.'s Opp'n at 5 n. 2) (emphasis added.)

Likewise, Rovell now claims that "when Medline pointed out that the handwritten date of '5-18'[for the purported May 18[th] contract] was really '8-18,' [August 18[th]], Jolly immediately

---

[7] The "August 28 contract" refers to the document that Jolly's president signed on August 28, 2003 and returned to Medline. *See* June 4, 2004 Op. & Order at 5, referring to Def.'s Rule 11 Mot., Ex. E.

acknowledged [that fact] and subsequently sought to amend the complaint to delete the allegations concerning the date that agreement was signed." (Pl.'s Resp. at 18.) Not so. Jolly's Opposition to Medline's motion to dismiss the amended complaint continued to assert that the proper date of that document (Exhibit C to the amended complaint) "appears to be '5-18-03,'" and that the date of May 18, 2003 "makes sense." (Pl.'s Opp'n at 4 n. 1.) Indeed, Jolly's Opposition dismissed Medline's "conten[tion] that the handwritten date is actually '8-18-03'" and spun a multi-paragraph argument that Medline was wrong. (*Id.*) Rovell did not move to delete the allegation about the "5-18-03" contract until the motion to dismiss the amended complaint was granted.

Compounding that transgression, Rovell now blames an associate attorney in his office for the error. (Rovell Decl. ¶¶ 16, 17.) According to Rovell, his associate misread the date on the document and he "reasonably" relied on the associate's representation. (Pl.'s Resp. at 9.) Rovell cannot duck the blame so readily. A supervisory attorney has responsibility for the actions of the attorney he supervises. *See, e.g.*, L.R. 83.55.1. In addition, Rovell signed the amended complaint, including the allegations about the "5-18-03" contract.

Finally, as discussed above, following the District Judge's decision dismissing the case with prejudice, Rovell filed the motion to reconsider and for leave to file the second amended complaint, not with the hope of demonstrating any reason why the District Judge should change her decision, but to correct his own mistakes, including the "5-18-03" mistake, before appeal. *See* Pl.'s Resp., Ex. 1, Tr. Aug. 2, 2004 at 18 (Mr. Rovell: "[B]ecause if we were going to the Court of Appeals to appeal your Honor's ruling, I didn't want to go up on a record in which I had reason to believe that an allegation that was set forth in the complaint was incorrect.") Accordingly, the court concludes that Rovell unreasonably and vexatiously multiplied the proceedings in this case and therefore should

-17-

be required to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred pursuant to § 1927.

### C.    Recommendation of Sanctions to be Imposed

The next issue is *what* costs, expenses, and attorneys' fees were reasonably incurred as a result of Rovell's sanctionable actions. Under § 1927, Medline may only be awarded the "excess" costs, expenses, and attorneys' fees incurred because of unreasonable and vexatious conduct. "Excess" costs, expenses, and attorneys' fees have been described by the Seventh Circuit as those that otherwise would not have been incurred. *Pacific Dunlop Holdings*, 22 F.3d at 120. *See also 2125, Inc. v. Village of Melrose Park*, No. 00 C 0680, 2003 WL 22317569 at *2, 4 (N.D. Ill. Oct. 8, 2003) (Darrah, J.) (ordering plaintiff's attorneys to pay fees that defendant incurred in connection with frivolous motion to reconsider dismissal and notice of appeal to the Seventh Circuit which was voluntarily dismissed one month later); *Benet*, 1995 WL 562087 at *4 (declining to award fees under § 1927 for defendants' filing of responsive pleadings that did not cause defendants to incur excess fees, but awarding sanctions against plaintiff's attorney for fees incurred by defendants for having to respond to frivolous motion for reconsideration).

Fortunately for Rovell, Medline's "excess" costs were limited because Jolly's lawsuit did not progress very far. Medline filed only two substantive documents: The motion to dismiss the original complaint, which was superceded by the amended complaint, and the motion to dismiss the amended complaint, which was granted resulting in the dismissal of the case with prejudice. As discussed above, the District Judge's prompt order dismissing the amended complaint saved Jolly from exposure to Rule 11 sanctions. At that point, Jolly could have pursued an appeal from that order,

or simply dropped the matter. But, instead, Rovell filed Jolly's motion to reconsider and for leave to file the second amended complaint.

Although Medline claims that its "excess" costs reach all the way back to the original filing of the lawsuit, in recognition of the punitive nature of § 1927, this court recommends that Medline be awarded costs incurred because of Rovell's conduct after the District Judge's April 30, 2004 order dismissing the case with prejudice, specifically, those resulting from Rovell's filing of the motion to reconsider and for leave to file the second amended complaint. That conduct cannot be excused as vigorous advocacy. Persisting in the district court in the face of the April 30, 2004 Order was literally "multipl[ing] the proceedings... unreasonably and vexatiously." Neither the District Judge nor Medline should have been put to the task of trying to wade through yet another pleading that referred to yet another set of exhibits and alleged three alternative "valid" and "enforceable" contracts. ([Proposed] Second Am. Compl.¶17.)

Once again, the District Judge's prompt action saved Jolly from further exposure, because the District Judge denied the motion to reconsider and for leave to file a second amended complaint before Medline filed a response. In fact, a briefing schedule was never even set on the motion. *See* May 25, 2004 Order [dkt 22]; August 9, 2004 Order at 2. Medline's counsel was not, apparently, required to appear in court at any time between Rovell's filing of the motion to reconsider and the district court's decision on that motion. *See* dkt 21, 22, 23.[8]

_____

[8] Medline's counsel stated at oral argument before this court that the parties spent time with respect to the motion to reconsider and proposed second amended complaint during oral argument before the District Judge on August 2, 2004. However, the August 2, 2004 argument appears to have been set solely to address Rovell's motion to vacate the sanctions order, not the motion to reconsider or proposed second amended complaint, which had been denied more than a month earlier. Not only does the docket support that fact (*see* dkt 34, 37), but the District Judge stated at the hearing that the parties were there to argue Rovell's motion to vacate. *See* Tr.

-19-

However, Medline's counsel had to deal with the motion to reconsider and proposed second amended complaint, even though no responsive filing was ultimately required. As Medline's counsel stated at oral argument before this court, every time a pleading was filed in this case, they could not ignore it, but, instead, had to examine it, explain it to their client, and be prepared to respond to it. This court concludes that two hours each for the motion to reconsider (and its supporting memorandum) and the proposed second amended complaint is a reasonable time for those activities. Therefore, the court recommends that Medline be awarded fees for four hours of its attorneys' time for dealing with Rovell's filings after the April 30, 2004 Order.

On the other hand, the court does not recommend that additional amounts be granted to Medline for the fees incurred in litigating its various sanctions motions. All of those documents were filed after the court had dismissed the case with prejudice. In fact, the only briefs filed by Medline after Jolly's motion to reconsider were those relating to Medline's own motions for sanctions (e.g., Medline's response to Jolly's counsel's motion to vacate the sanctions order and Medline's reply in support of its motion for sanctions.) [Dkt 31, 47.] As the District Judge stated in her August 9, 2004 Order, Medline "initiated and vigorously pursued three sanctions motions; attendant costs should have been foreseen." (August 9, 2004 Order.)

Thus, this court respectfully recommends that Rovell be ordered personally to pay Medline the attorney's fees for four hours of the time spent by Medline's lead attorney in this case, Dan J. Hofmeister, Jr., at Hofmeister's regular rate as of May 2004. Hofmeister shall advise Rovell in

---

Aug. 2, 2004 at 2. Although the motion to reconsider and proposed second amended complaint may have been discussed at the August 2, 2004 argument, Medline was not required to spend any "excess" time preparing to respond to those filings at the hearing.

writing of that amount within three business days following the service of this report and recommendation.

The court also believes that an additional, nominal sanction should be imposed against Rovell for wasting the District Judge's time and resources by his unreasonable and vexatious filing of the motion to reconsider and proposed second amended complaint. In the end, it was the District Judge (and thus the taxpayers) who bore the brunt of Rovell's conduct, as the District Judge had to review the motion in light of the previous pleadings that were replete with the type of problems discussed above, and had to address, in a written opinion, the meritless character of Rovell's motion and proposed second amended complaint. The District Judge found, among other things, that at least one argument in the motion to reconsider was "disingenuous," and that the proposed second amended complaint failed to cure at least two of the prior complaints' defects. *See* June 4, 2004 Op. & Order at 6, 7. *See also id.* at 4, 5-7. "While § 1927 does not authorize a sanction in the nature of a share of the court's overhead . . . , an order directing nominal reimbursement of the cost to the government is appropriate." *Novelty Textile Mills, Inc. v. Stern*, 136 F.R.D. 63, 78 (S.D.N.Y. 1991) (citations omitted). In *Novelty Textile Mills*, the court awarded $250.00 to the government as a sanction under § 1927. *Id. See also Vandeventer v. Wabash Natl. Corp.*, 893 F. Supp. 827, 859-60 (N.D. Ind. 1995) (ordering attorneys to pay $500.00 to the Clerk of Court as a nominal sanction under § 1927 where "the Court and the taxpayers have been the true casualties"); *Royal Maccabees Life Ins. Co. v. Malachinski*, No. 96 C 6135, 2001 WL 290308 at *14, 15 (N.D. Ill. March 20, 2001) (Guzman, J.) (directing defendant's counsel to pay $300.00 to the Clerk of Court under § 1927 to compensate the court, where attorneys "repeatedly and needlessly wasted the Court's time").

Thus, this court also respectfully recommends that Rovell be ordered personally to pay

$450.00 to the Clerk of the Court as a nominal sanction pursuant to § 1927 for his waste of the district court's time and resources.

## III.    Medline's Supplemental Request For Sanctions Pursuant to 28 U.S.C. § 1927

In its response to Rovell's motion to vacate the sanctions order before the district court, Medline argued that the district court should "expand its order further by explicitly sanctioning Rovell again for prolonging this frivolous action." (Def.'s Resp. Pl.'s Counsel's Mot. Vacate Sanctions Order at 12.) The District Judge referred Medline's request for supplemental sanctions to this court for a report and recommendation, as well. (August 9, 2004 Order.)

This court respectfully recommends that supplemental sanctions pursuant to § 1927 be denied. Although Medline complains about the added costs that it had to incur as a result of Rovell's motion to vacate the sanctions order, the District Judge viewed the motion to vacate as having some merit, because the motion was granted. This court is recommending that some sanctions be awarded against Rovell, but the sanctions under § 1927 are limited to the "excess" costs resulting from his conduct. The requested supplemental sanctions do not fall into that category.

### Conclusion

For the foregoing reasons, this court respectfully recommends that Medline's Motion for Rule 11 Sanctions be denied; that Medline's request for supplemental sanctions pursuant to 28 U.S.C. § 1927 be denied; and that Medline's Motion for Sanctions Pursuant to 28 U.S.C. § 1927 be granted as follows: first, that attorney Michael J. Rovell be ordered to pay $450.00 to the Clerk of the Court as a nominal sanction pursuant to § 1927; and second, that attorney Michael J. Rovell be ordered to pay Medline attorney's fees for four hours of the time spent by Medline's lead attorney

in this case, Dan J. Hofmeister, Jr., at Hofmeister's regular rate as of May 2004. Hofmeister shall advise Rovell in writing of that amount within three business days following the service of this report and recommendation.

Specific written objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(b). Failure to file objections with the district court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this court in the report and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

Geraldine Soat Brown
United States Magistrate Judge

January 31, 2005

-23-